**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GARY GUMER DIAZ** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09 C 2728** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Claimant Gary Gumer Diaz ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Claimant raises the following issues: 1) whether the ALJ erred in finding that Claimant is not disabled absent substance abuse; 2) whether the ALJ erred in his credibility finding; and 3) whether the ALJ erred in not properly considering Claimant's mental impairments. For the following reasons, the Court denies Claimant's motion for reversal or remand and grants the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND FACTS

### A.  Procedural History

Claimant initially applied for DIB on March 15, 2007, alleging a disability onset date of November 15, 2005. R. 53-56, 108-10. He also filed an application for SSI on May 22, 2007 on the basis of disability. R. 116-18. The Social Security Administration ("SSA")

denied both claims on July 24, 2007. R. 74-78. Claimant then filed a request for reconsideration on August 20, 2007, which was denied on November 2, 2007. R. 79, 80-83. Thereafter, Claimant requested a hearing before an ALJ. R. 90.

On April 15, 2008, Administrative Law Judge Daniel Dadabo ("ALJ") presided over a hearing at which Claimant appeared with his attorney, Harold M. Saalfeld. R. 6-52. William J. Schweihs, a Vocational Expert ("VE") testified in addition to Claimant. R. 37, 104-05. No medical expert testified at the hearing. The ALJ returned a decision finding Claimant was not disabled under the Social Security Act on July 25, 2008. R. 57-70. The ALJ found that "[b]ecause the Claimant would not be disabled if he stopped substance use . . . [he] has not been disabled with the meaning of the Social Security Act . . . ." R. 70.

Claimant filed for a review of the ALJ's decision to the Appeals Council, which denied Claimant's request on March 11, 2009. R. 1-3. Therefore, the ALJ's decision became the final decision of the Commissioner. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

## B.    Hearing Testimony - April 15, 2008

### 1.    Gary Gumer Diaz - Claimant

At the time of the hearing, Claimant was 42 years old and living with his mother. R. 11, 35-36. Claimant dropped out of high school following the 11th grade, but received his GED in 1990 and clerical training in 1992. R. 11, 39. Claimant has been employed by at least 28 different employers in the course of his work life. R. 10. Claimant testified that his criminal record makes it difficult for him to get work. R. 18. Claimant pled guilty to

accessory theft in the mid 1990s and to criminal sexual abuse in 2002, and served jail time after breaking his probation by "self-medicating" with cocaine. R. 18, 22, 27. Claimant was incarcerated from November 2005 to January 2007. R. 18, 27, 260-351. According to Claimant, he spent half of his time in prison on suicide watch. R. 28.

Claimant has been unemployed since 2007. R. 16. His most recent work experience was working for short periods at jobs found through temporary labor agencies, most recently as a die caster, a job that required hand-eye coordination. R. 30-31. Claimant's prior work history includes working as an assembler in a plant, driving a forklift in shipping and receiving, and loading and unloading trucks, among other things. R. 17, 19-20, 41. Claimant noted troubles performing some of the duties at the manufacturing plant due to his medications and periods of mental "short circuits." R. 11, 32. He also reported having trouble coming to work every day, as he frequently needed to take a couple of days off due to anxiety and other mental health issues. R. 17-18.

According to Claimant, he suffers from depression and acute anxiety. R. 14-15. He has been hospitalized on numerous occasions for suicide attempts, three times between 1992 and 1998 and again in December 2007 and February 2008. R. 13-14. Claimant states that he often resorts to cutting himself when he feels especially anxious or depressed. R. 26, 28. He believes the depression to be the result of an unhappy childhood combined with the tragic death of a young wife when he was still a teenager. R. 15.

Claimant's anxiety makes it very difficult for him to be around many people at the same time. R. 15, 21. His anxiety causes pressure in his chest and a shortness of breath. R. 15, 35. Claimant also testified that he suffers from mood swings and panic attacks. R. 21.

3

Occasionally Claimant has what he refers to as a "short circuit" or "cycle" wherein his energy level drops dramatically or he feels the urge to harm himself. R. 32-34. This anxiety is present when he is in a workplace where many people work together, and Claimant testified it has prevented him from working around other people. R. 11, 15, 21.

Claimant's treating psychiatrist is Dr. Robert Grunsten, M.D. ("Dr. Grunsten"), who Claimant has seen since December 2007. Claimant testified that Dr. Grunsten has prescribed him several medications, and at the time of the hearing he was taking Lamactil and Valium for anxiety, Thorazine for mood swings, and Remeron for sleep problems. R. 12, 21. According to Claimant, even with these medicines, he is "barely functioning." R. 11. He is currently not undergoing therapy with Dr. Grunsten. R. 26.

Claimant has a history of using drugs and alcohol to self-medicate and testified that he had used cocaine as recently as February 2008, two months prior to the hearing. R. 22-23. When first asked, Claimant denied using cocaine at any time after 2001, but after careful questioning he stated he had used cocaine in 2007 and in 2008. *Id.* Claimant began his substance use as a way to cope with his mental illness. He did not have insurance at the time and believed that the use of illegal substances was his only option. R. 22. After a period of self-medication, the drug use "turned into a different addiction." *Id.* Claimant testified that his anxiety and depression would likely not become more manageable if he were to discontinue his use of cocaine and alcohol, noting that during periods where he did not have drugs in his system, he still experienced symptoms. R. 23-25.

Claimant testified that he does not typically socialize much outside the home. R. 35.

On a typical day, he sleeps for a large portion of the day, does light chores, and occasionally listens to music. R. 29, 34. Claimant testified to having problems remembering to eat and needing to be reminded to do so by his mother. R. 29-30. He occasionally helps his mother with the laundry or garbage, or runs to the store for items, as long as there is no chance that doing so could allow him to harm himself. R. 35. When he was last working, Claimant would usually drive himself the six minutes to work everyday. R. 19.

### 2. William J. Schweihs - Vocational Expert ("VE")

William J. Schweihs, a Vocational Expert, characterized Claimant's past work experience as semi-skilled that required anywhere from light to heavy physical exertion. R. 43. The VE noted that it was difficult to classify all of Claimant's past employment, as he was not sure of the nature of many of the 28 jobs that Claimant had held. R. 43.

The VE considered limitations the ALJ put on any potential position, including moderate restrictions on social functioning and concentration and a ban on operating heavy machinery or being exposed to great heights. R. 44. The VE testified that cleaning or janitorial positions fit those restrictions and require anywhere from light to heavy physical exertion. R. 44-45. The VE testified there are 5000-6000 such positions in the greater Chicago area. *Id.* The VE stated these positions would require Claimant to work 8 hours a day, 5 days a week. R. 45-46. These positions do not generally allow for unscheduled breaks during the work day, nor do they allow a person to miss work a few times a month. R. 47-49. These positions would require less contact with people throughout the course of the day. R. 49. In response to Claimant's attorney, the VE also testified that if limited to an

environment where an individual would never encounter a sharp cutting instrument, it would effectively eliminate all work.  R. 51.

## C.  Medical Evidence

### 1.  Treatment at the Illinois Department of Corrections ("IDOC")

Claimant was incarcerated, apparently in several different facilities, from November 2005 to January 2007, and his medical records from the IDOC date back to January 2006. R. 260.  In April 2006, he was placed on Prozac for depression and anxiety.  R. 337.  In May, the Claimant denied that he was suicidal.  R. 296.  In September, Claimant was placed on Observation Status, stating he was depressed, and asked for a change in his medicine.  R. 305.  The IDOC psychologist, Dr. James Nielsen ("Dr. Nielsen"), diagnosed Claimant as major depressive disorder, social phobia, and cocaine dependence.  R. 347.  In October, Dr. Nielson noted Claimant was "in good spirits," "alert and oriented," and exhibited "good self care" and appropriate dress.  R. 350.

### 2.  Gregory C. Rudolph, Ph.D.

On June 22, 2007, Claimant underwent a psychological consultative examination with Dr. Gregory C. Rudolph ("Dr. Rudolph") at the request of the state agency, who determined that he experienced "an anxiety disorder with social avoidance" and anti-social behavior.  R. 352.  Dr. Rudolph noted Claimant presented with some generalized anxiety and some vegetative symptoms.  R. 354.  Claimant told Dr. Rudolph that he was not currently taking any medications nor receiving any counseling for his symptoms.  R. 354.  Claimant also told Dr. Rudolph that he had not used cocaine for 12 years.  R. 354.  Dr. Rudolph opined that Claimant was oriented to reality, showed appropriate memory and recall, is able to use good

judgment, and is able to use reasoning skills.  R. 354-55.

### 3.  Jerrold Heinrich, Ph.D - State Agency Psychologist

On July 16, 2007, Dr. Jerrold Heinrich, Ph.D ("Dr. Heinrich") completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment for the SSA.  R. 357-74.  Dr. Heinrich found that Claimant suffered from depressive syndrome, anxiety disorder with social disturbance, anti-social behavior, and cocaine dependence.  R. 360, 362, 364.  Dr. Heinrich concluded that Claimant suffered mild to moderate functional limitations and retained the capacity to do simple tasks with certain limitations.  R. 367, 373.  This assessment was not modified when reconsidered in October 2007 by Dr. Russel Taylor, Ph.D. after additional information was supplied.  R. 375-77.

### 4.  Lynn Hughes, LCSW

Claimant was interviewed by Lynn Hughes, LCSW ("Ms. Hughes") of the Lake County Health Department and Community Health Center, in November 2007.  R. 378-84.  At this interview, Claimant indicated he suffered anxiety and depression that kept him from leading a productive life.  R. 378.  Claimant reported to Ms. Hughes that he self-injures because it "releases pressure."  R. 381.  Claimant denied ever having legal troubles, being incarcerated, or having used illegal substances in over a decade; he also told Ms. Hughes he had been sober (from alcohol) for at least a month.  R. 378-80.

### 5.  Dr. Robert Grunsten, M.D.

Ms. Hughes referred Claimant to Dr. Robert Grunsten in December 2007.  R. 384-85.  Dr. Grunsten initially diagnosed Claimant with bipolar disorder, social phobia and panic

disorder with agoraphobia.  R. 386.  Claimant stated that he was doing much better after a few weeks of treatment and that the medications prescribed by Dr. Grunsten were "helping a great deal."  R. 388.  On April 3, 2008, Dr. Grunsten wrote a letter for Claimant stating that "[Claimant] is unable to work at this time" and that "I am not able to accurately predict when he will be able to return to work."  R. 409.  While treated by Dr. Grunsten, Claimant responded well to his medications and the doctor did not feel he was a risk to himself.  R. 388-90.  Dr. Grunsten signed an affidavit in October 2008, after the ALJ denied Claimant's claim.[1]  Claimant's Motion,[2] Exhibit AC-2.  In this affidavit, Dr. Grunsten opined that Claimant's psychiatric disorder would prevent him from working, "even in the absence of drug use."  *Id*.  Claimant tested positive for drug use twice in the ten months preceding October 2008. *Id*.

### 6.    Hospitalizations

Claimant stated that he had been hospitalized on at least two occasions for suicide attempts.

### a.    December 2007 - Vista Medical Center

Claimant was admitted to Vista Medical Center on December 9, 2007.  R. 398.  According to the Initial Assessment Form, Claimant had been "drinking heavily . . . and fell out of bed."  R. 399.  Claimant had taken three to four times his regular dosage of several medications.  R. 400.  Claimant "maintained [to hospital personnel] that he never attempted

---

[1]The October 2008 affidavit was submitted after the ALJ issued his decision, and thus was not evidence he considered.

[2]"Claimant's Motion" refers to Claimant's Memorandum in Support of Motion to Reverse the Final Decision of the Commissioner.

suicide." R. 406. In fact, days later Claimant told Dr. Grunsten that he had fallen down some stairs and hurt his back. R. 388. He was diagnosed with bipolar disorder and given a GAF[3] score of 50 by Dr. Uzoma Okoli, M.D. ("Dr. Okoli"), the hospital psychiatrist. R. 406-07.

### b. February 2008 - Illinois Department of Human Services ("IDHS")

Claimant went to the IDHS in February 2008, after a suicide attempt, where he received a diagnosis of bipolar disorder and poly-substance abuse. R. 393-96. Claimant had slashed both of his arms. R. 393. Claimant told Dr. Grunsten that he had gone to the hospital because he "became more manic." R. 388. It is unclear from the record whether any treatment followed up this visit to the IDHS.

---

[3] A Global Assessment of Functioning ("GAF") score is an indication of a patient's social, occupational, and psychological functioning out of a 100.

### c. May 2008 - Vista Medical Center

Claimant was again admitted to Vista Medical Center on May 16, 2008 as depressive and suicidal. Claimant's Motion, Exhibit AC-3, at 1. He was diagnosed with bipolar disorder and ADHD. *Id*. Dr. Okoli found that Claimant had not been taking his medication and had been drinking heavily. *Id*. at 8. According to Claimant, he had gone on a drinking binge before the suicide attempt and that "he has had multiple psychiatric admissions, usually connected with his drinking." *Id*. at 9. Dr. Okoli found that Claimant's underlying anxiety and mood disorders were "worsened by his drinking," and recommended he undergo substance abuse treatment. *Id*. at 10. Claimant was treated with medication and responded by feeling less depressed. *Id*. at 8. Though Dr. Okoli noted Claimant's case as one of an attempted suicide, Dr. Abdul Aziz, the consulting physician, stated that Claimant was brought to the ER after his mother called the police because Claimant was drunk and causing a disturbance and was uncooperative with the police. *Id*. at 11.

## D. The ALJ's Decision - July 25, 2008

After the hearing and review of medical evidence, the ALJ issued a decision denying Claimant's applications for DIB and SSI. R. 57-70. In reviewing Claimant's applications, the ALJ engaged in the requisite five-step sequential analysis. *See* R. 61-62.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of November 15, 2005. R. 63. At step two, the ALJ determined that Claimant suffered from affective disorder, anxiety disorder, and substance abuse disorder. *Id*. This combination of impairments constituted a severe combination of

impairments as outlined by 20 CFR 404.1520(c) and 416.920(c). *Id*.

At step three, the ALJ found Claimant's impairments, including substance abuse, met the specific severity criteria of 20 CFR 404.1520(d) and 416.920(d). *Id*. The ALJ stated that Claimant's depressive and manic disorders and substance abuse caused marked difficulties in his ability to function socially and to concentrate, and resulted in repeated episodes of decompensation. R. 63-64. However, at this step, the ALJ also found that the severity of Claimant's symptoms was caused by cocaine use, which the Claimant had used up to two months before the hearing, as well as alcohol abuse. R. 65. While noting that some limitations would remain if Claimant stopped substance use, his impairments would not be a combination meeting the severity criteria of the statute. *Id*. In reaching this determination, the ALJ referred to the fact that Claimant's symptoms abated while he was in jail, where he had no access to cocaine or alcohol. R. 67-68. The ALJ also discounted the opinion of Dr. Grunsten that Claimant was unable to work because the Claimant "was not forthcoming about drug use," thus the ALJ concluded the doctor's assessment was not based on all available information. R. 68. The ALJ also noted that, according to Dr. Grunsten, Claimant was responding to medication, "suggesting that treatment has been effective to restore function." R. 68. Therefore, the ALJ referred to opinions of the non-examining state agency medical consultants as "representative of the claimant's actual functioning . . . assuming that substance abuse stopped." R. 68

The ALJ found Claimant's testimony as to the extent and severity of his limitations were "not credible to the extent they are inconsistent with the residual functional capacity"

and other evidence in the record. R. 67-68. Also noted in the credibility assessment were Claimant's misrepresentations to several doctors and his social worker that he had ceased to use drugs a decade ago, as well as misrepresentations to the ALJ regarding drug use and work history. R. 65, 68. Based on this evidence, the ALJ determined that, absent substance abuse, Claimant would not have an impairment that met the specific severity requirements of 20 CFR 404.1520(d) and 416.920(d). R. 65.

However, the ALJ found that if Claimant stopped substance abuse, he would still have certain residual limitations; including moderate difficulties in social functioning and moderate difficulties in concentration. R. 66 (based on the assessment of Dr. Heinrich, the state agency psychologist). Thus, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC")[4] to perform a full range of work at all exertional levels, subject to the need for work learnable on short demonstration, no positions requiring extended oral or written communication, and no work around unprotected heights, heavy equipment, or operating machinery. R. 66.

At step four, the ALJ found that Claimant would not be able to perform past work, even if he stopped substance use. R. 69. However, at step five, the ALJ found that, if Claimant stopped substance use, "there would be a significant number of jobs in the national economy that the Claimant could perform." *Id*. The ALJ noted that Claimant had been largely successful in obtaining gainful employment up until he was incarcerated, and that

---

[4] The RFC is the most that a claimant can do despite the effects of his impairments. 20 C.F.R. § 404.1545(a).

Claimant "worked little between 2005 and 2006, mainly because he was in prison." R. 68.

The ALJ determined that the substance use was a "contributing factor material in the determination of disability," since he would not be disabled absent the substance abuse. R. 70. Therefore, according to 20 CFR 404.1520(g) and 416.920(g), the ALJ found the Claimant was not disabled within the meaning of the Social Security Act. *Id.*

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the

Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not

a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a listed impairment; 4) whether the claimant can perform past relevant work; and 5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following arguments in support of his motion: 1) the ALJ erred in finding that Claimant is not disabled absent substance abuse; 2) the ALJ erred in his credibility finding in the mistaken belief that Claimant had not revealed prior substance abuse to treating professionals; and 3) the ALJ erred in not properly considering Claimant's mental impairments. The Court will address each in turn.

**A.     The ALJ's Finding that Claimant Was Not Totally Disabled Absent Substance Abuse is Supported by Substantial Evidence.**

Claimant challenges the ALJ's residual functional capacity ("RFC") finding that "claimant retains capacity for a substantial range of unskilled work, absent the effects of substance abuse." R. 68. Claimant argues that the ALJ's finding was not supported by

substantial evidence and failed to give sufficient weight to his treating physician, Dr. Grunsten.

Generally, when an ALJ makes an RFC determination, he must weigh all relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. However, Congress has specifically precluded a claimant's drug or alcohol addiction from contributing to entitlement to disability benefits. 42 U.S.C. § 423(d)(2)(C). Thus, when an applicant has both a potentially disabling illness and is a substance abuser, the issue for the ALJ is whether, were the claimant not a substance abuser, he would still be disabled. 20 C.F.R. § 404.1535(b)(1); *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). If so, he is considered disabled independent of the substance abuse and entitled to benefits. *Id.*

The ALJ must also determine what weight to give the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527. A treating physician's opinion is entitled to controlling weight if it is supported by the medical findings and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). However, so long as the ALJ "minimally articulates his reasons," he may discount a treating physician's opinion if inconsistent with that of a consulting physician or other substantial evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (treating physician's opinion "is not the final word on a claimant's disability"). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375,

377 (7th Cir. 2006).

### 1.     Effect of Substance Abuse

In the present case, the ALJ found that Claimant's manic and depressive episodes, combined with his abuse of drugs and alcohol, cause marked limitations.   R. 63-64. However, in the absence of substance abuse, the ALJ found that Claimant would suffer only moderate limitations in concentration and social functioning, and thus retained the RFC to do a range of unskilled work with certain restrictions.   R. 66-68.   As support for this conclusion, the ALJ cited to substantial evidence in the record.

First, while Claimant was incarcerated and forced to abstain from drugs and alcohol, the prison medical records do not reflect mental health issues requiring more than regularly scheduled treatment.   *See* R. 303, 337, 342, 347, 350.   Despite Claimant's testimony that he was on suicide watch for almost half his incarceration, the prison records expressly fail to corroborate this assertion.   *See* R. 259-351.   Claimant was treated for depression and anxiety while in prison, but the ALJ pointed to assessments in September and October 2006 indicating Claimant did not appear depressed and had a GAF of 74, reflecting only mild problems with functioning.   R. 345, 350.   Furthermore, the records indicate that Claimant demonstrated appropriate dress and good self-care, particularly towards the end of his incarceration.   *See, e.g.,* R. 347-51.   The ALJ concluded that, since Claimant's access to cocaine and alcohol would have been substantially inhibited or precluded while he was in prison, the absence of noteworthy incidents in the records indicates substance abuse likely serves to exacerbate his manic and depressive symptoms.   R. 68.

Second, months after Claimant's release from prison, a November 2007 evaluation by Ms. Hughes indicated Claimant had been sober for at least one month.  R. 379.  At that time, Claimant exhibited normal memory, perception, orientation, speech, and intellectual ability, although he reported ongoing self-injury.  R. 381.  The ALJ then observed that the following month, when Claimant was hospitalized for overdosing on his medication, the attending physician Dr. Okuli noted Claimant had been "drinking heavily."  R. 399.  Dr. Okuli further found that the December 2007 hospitalization was not a suicide attempt and rated Claimant with GAF scores between 50 and 55, indicating moderate limitations in functioning.  R. 406-07.  In May 2008, when Claimant was hospitalized for cutting himself, Dr. Okuli noted the incident followed Claimant's consumption of an "excessive amount" of alcohol.  Claimant's Motion, Exhibit AC-3, at 9.  Dr. Okuli found that Claimant's underlying anxiety and mood disorders were "worsened by his drinking," and that his hospitalizations had been related to excessive drinking.  *Id.* at 10.

Accordingly, the ALJ concluded that, absent heavy drinking and drug use, Claimant's adaptive capacities could reasonably be expected to allow him to continue the work pattern established before his incarceration. R. 68. The ALJ noted that Claimant had been able to secure work and remained engaged in substantial gainful activity apart from the decompensations caused by episodic substance abuse. *Id.* Although Claimant's job history is made up primarily of temporary work, Claimant admitted this was largely due to the fact that his criminal history makes it difficult to find full-time work, which the ALJ properly recognized as an "extraneous, non-disability related" reason. R. 16, 68. Although Claimant worked little in 2005 and 2006, the ALJ noted this was mainly due to his incarceration. *Id.* Claimant also did some work in 2007, although he failed to mention it until questioned by the ALJ. R. 16.

Claimant argues that the ALJ's RFC finding in this case was improper in light of *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006). In *Kangail*, the Seventh Circuit recognized that individuals who experience manic-depressive episodes, also known as bipolar disorder, may turn to substance abuse as a way of alleviating their symptoms. *Id.* at 629. The court remanded the case back the ALJ because "the fact that substance abuse aggravated [the claimant]'s mental illness does not prove that the mental illness itself is not disabling." *Id.* The court was particularly concerned that the ALJ attached too much weight to the claimant's ability to sporadically hold down temporary jobs after she stopped abusing drugs and alcohol. *Id.* The record showed that, even while sober, the claimant was unable to hold on to those jobs due to manic and depressive episodes. *Id.* at 630.

The key difference between *Kangail* and the present case is that the ALJ here pointed

to specific evidence in the record that Claimant's documented episodes of decompensation are related to substance abuse. Unlike the claimant in *Kangail*, Claimant's records here reflect improved functionality during periods when he was not abusing drugs or alcohol. R. 259-351, 279. Specific documented reports of self-harm were found to be in conjunction with substance abuse. R. 406-07. And while Claimant has only held down temporary jobs, the ALJ noted that this was the only work Claimant sought out due to his criminal history. R. 68. Furthermore, the ALJ did not opine that Claimant had no limitations absent substance abuse; rather, he concluded that substance abuse caused otherwise moderate impairments to become severe. R. 65-66. In light of the record here, the ALJ's conclusions about Claimant's limitations in the absence of substance abuse were not unreasonable and were supported by substantial evidence.

## 2. Treating Physician's Opinion

Claimant further argues that the ALJ erroneously discounted the opinion of Dr. Grunsten, a psychiatrist who has treated Claimant since December 2007. Dr. Grunsten opined in a letter dated April 3, 2008 that Claimant could not work due to his medical condition. R. 409. However, the ALJ sufficiently articulated his reasons for giving Dr. Grunsten's opinion less weight. First, the ALJ noted that the three-line April 2008 letter was conclusory and potentially founded on false information. R. 68, 409. The ALJ specifically pointed out that Claimant had not been forthcoming with Dr. Grunsten about his substance abuse, and had in fact denied to Dr. Grunsten that he had a substance abuse problem. R. 68, 385. Furthermore, Dr. Grunsten's progress notes reflect that Claimant was responsive to an

ongoing medication regimen and as of March 2008 was feeling "stable."  R. 388-89.  Dr. Grunsten repeatedly opined that Claimant was "not a danger to self or others."  *Id.*  The ALJ concluded that Dr. Grunsten's April 2008 assessment was therefore not supported by and was in fact inconsistent with his treatment notes.  R. 68.  Thus, the ALJ relied upon the opinions of the non-examining state agency doctors as more reflective of Claimant's functional capacities, even though they were conducted before Claimant began seeing Dr. Grunsten.  *Id.*

Claimant points out that the ALJ was not able to consider the more detailed affidavit from Dr. Grunsten dated October 29, 2008, as it was submitted to the Appeals Council after the ALJ issued his opinion in July 2008.  In that affidavit, Dr. Grunsten emphasized that Claimant has significant social anxiety and panic attacks, and self-injures frequently.  Claimant's Motion, Exhibit AC-2.  Dr. Grunsten also stated that although Claimant has intermittently abused drugs, even absent drug use his psychiatric conditions would prevent him from working.  *Id.*  Since the Appeals Council denied review, the ALJ never considered this evidence.

However, the ALJ "cannot be faulted for having failed to weigh evidence never presented to him."  *Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).  Furthermore, since the Appeals Council denied review, the ALJ's decision is the final, appealable decision of the Commissioner now before this Court.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Only if the Appeals Council made a legally erroneous decision to deny review may new evidence be considered.  *Ross v. Barnhart*, 119 Fed. Appx. 791, 797

(7th Cir. 2004). However, the Appeals Council is not required to explain its reasoning for denying review, and it did not do so in this case. *Id.; see* R. 1-3. Therefore, this Court has no basis to overturn the Appeals Council's decision. *See Ross*, 119 Fed. Appx. at 798. Dr. Grunsten's October 2008 affidavit thus cannot be a basis for reversing the ALJ's decision.

**B.      The ALJ's Credibility Finding Was Not "Patently Wrong."**

When evaluating a claimant's own report of his symptoms and limitations, an ALJ must assess the credibility of the claimant's statements. SSR 96-7p. The ALJ is in the best position to observe witnesses, and his credibility finding is thus viewed deferentially and will not be overturned so long as it has some support in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001). "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of other evidence in the case." *Johnson v. Barnhart,* 449 F.3d 804, 805 (7th Cir. 2006). However, an ALJ assessing credibility must consider the testimony in light of the entire record and must "articulate specific reasons" for his determination. *Schmidt v. Barnhart,* 395 F.3d 737, 746 (7th Cir. 2005).

In the present case, Claimant argues the ALJ erred in finding him not credible in the "mistaken belief" he withheld his history of drug abuse from his mental health providers. Given the ALJ's reasoning, however, his credibility determination is supported by the record. First, the ALJ pointed to the inconsistencies between Claimant's hearing testimony and statements made in the medical record. R. 67-68. Claimant first testified at the hearing that he had not used cocaine or alcohol since 2001, but after the ALJ questioned him further, he

admitted he last used in 2007. R. 22-23. Claimant then admitted to using again in February 2008 after further questioning from the ALJ. R. 23. Second, the ALJ referred to Claimant's repeated denials to treating health professionals of his substance abuse, including to his treating psychiatrist, Dr. Grunsten. R. 68. Claimant also denied any criminal history when he sought treatment from Lake County Health Department and Community Health Center, despite the fact that he had just been released from prison. R. 378. Finally, Claimant neglected to admit to the ALJ he had worked in 2007 until repeated questioning revealed that he had. R. 68.

Given Claimant's inconsistent statements both to the ALJ and to his treatment providers, the ALJ found that Claimant's report of the intensity, persistence, and limiting effects of his symptoms was not credible to the extent it conflicted with the RFC finding. In light of Claimant's inconsistencies, particularly his failure to disclose his history of substance abuse, the ALJ clearly had a basis for his credibility determination. Further, he specifically articulated the reasons the Claimant's statements were not entirely supported by the medical evidence. The ALJ was in the best position to evaluate Claimant's in-person testimony, and his conclusions find support in the record. Therefore, the Court cannot say that the ALJ's credibility finding was "patently wrong."

## C. The ALJ Reasonably Evaluated Evidence of Claimant's Mental Impairments.

Claimant's final argument appears to rest on a misquote of the ALJ that Claimant's limitations would cause "no more than a minimal impact." *See* R. 65; Claimant's Motion at 12-13. However, the ALJ actually found that Claimant's limitations would cause "*more than a minimal impact on his ability to perform basic work activities . . . .*" *Id.* (emphasis added).

The ALJ ultimately concluded, though, that when the substance abuse is taken out of the equation, as it must be, Claimant is left with moderate limitations. R. 66-67. Specifically, the ALJ noted that Claimant has moderate limitations in social functioning and concentration, and included those restrictions in his hypothetical to the VE. R. 44. The VE found that, even given such limitations, significant jobs still exist in the local economy that Claimant can perform. R. 44-46. Therefore, the ALJ properly considered Claimant's mental impairments and remand or reversal is not warranted on this point.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court denies Claimant's motion for reversal or remand and grants the Commissioner's cross-motion for summary judgment.

SO ORDERED THIS 2nd DAY of FEBRUARY, 2010.

_Morton Denlow_

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


Copies sent to:

Harold Marc Saalfeld
Law Offices of Harold M. Saalfeld
25 North County Street
Suite 2R
Waukegan, IL 60085

James Hail
Assistant Regional Counsel
Social Security Administration
200 West Adams Street
Suite 3000
Chicago, IL 60606

Counsel for Plaintiff

Donald R. Lorenzen
United States Attorney's Office (NDIL)
219 South Dearborn Street, Suite 500
Chicago, IL 60604

Counsel for Defendant